## HART v. WILSON. (No. 678–4577.)

(Commission of Appeals of Texas, Section B. Nov. 17, 1926.)

1. **Judgment** ⬅256(2)—**Findings whether lessee was denied contract right to purchase, and whether purchaser had notice of lessee's rights, held material, and not to be disregarded in judgment.**

Where lessee's contract provided that he should have preference right to purchase, in suit by lessee against one purchasing from lessor, special findings whether lessee was denied right to purchase, and whether purchaser had notice of contract, *held* not immaterial findings which court could disregard and enter judgment inconsistent therewith.

2. **Landlord and tenant** ⬅92(1)—**Where lessee, having first right to purchase under lease, had opportunity to purchase before defendant purchased, defendant was entitled to judgment in suit by lessee against him for specific performance.**

Where lessee, in suit by lessee against purchaser for specific performance of contract with lessor, giving lessee preference right to purchase property, had had opportunity to pur-

·chase before defendant purchased, at same price defendant paid, defendant was entitled to judgment.

**3. Judgment ⬅═256(2).**

Where court submitted special issues which were material, it should have entered judgment in accordance with findings, or granted new trial.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Maple Wilson against E. R. Hart and J. H. Brokaw. Plaintiff took a nonsuit as to Brokaw, and from a decree for plaintiff against E. R. Hart (281 S. W. 339), E. R. Hart brings error. Reversed and remanded.

Pressly & Thomas, of Muleshoe, and Williams & Martin, of Plainview, for plaintiff in error.

Robt. A. Sowder, of Lubbock, for defendant in error.

POWELL, P. J. The nature and result of this case in the trial court are admirably stated by the Court of Civil Appeals as follows:

"Maple Wilson sued E. R. Hart and J. H. Brokaw in the district court, praying for specific performance of the following contract, which plaintiff alleged that he entered into with Brokaw, who was the owner of a quarter of a section of land in Bailey county; the contract is as follows:

" 'Know all men by these presents, that I have this day leased Maple Wilson for grazing purposes for three years from date of this lease, the southwest ¼ of section 9, Hansford county school lands in Bailey county, Tex., containing 160 acres, for 10 cents per acre per annum. Payable each year in advance at Farmers' State Bank, Hopkinton, Iowa. This lease is made subject to sale with right to assign said lease by lessee; and any unearned lease money shall be returned to Maple Wilson in case of sale, and lessee shall have 60 days' notice in case of sale, and, as a part of this lease and in consideration of the sum paid for same, as aforesaid, the said Maple Wilson shall have the preference right at the end of said lease to re-lease, and the preference right to buy said land at the price and on the terms offered for it, if sold.

" 'Witness our hands this the 25th day of August, 1923.

" '[Signed]        J. H. Brokaw, Lessor.
           " 'Maple Wilson, Lessee.'

."The lease was duly acknowledged by Wilson, but was not acknowledged by Brokaw.

"After the declaration, of the terms of the lease, the petition alleges that Brokaw sold the land to Hart, and failed to give plaintiff an opportunity to buy the same, and prayed that Hart be required to convey the land to plaintiff by sufficient deed, upon the payment by plaintiff to Hart of the sum of $1,280, which he tenders in his pleading. He prays, in the alternative, that he have his damages in the sum of $720. Brokaw was a nonresident of the state, and plaintiff took a nonsuit as to him.

"The defendant Hart answered by general demurrer, certain special exceptions, general denial, and specially denied that he had any notice, as alleged in plaintiff's petition, and set up the fact that he had purchased the land and paid the consideration to Brokaw, without any notice of plaintiff's alleged rights.

"By supplemental pleading the plaintiff alleged that Hart knew he was in possession of the land under his lease and under his option to purchase; that, if he did not actually know said facts, he had knowledge of sufficient facts to put him upon inquiry, and could have known, by the use of reasonable diligence, of plaintiff's preference right to purchase from Brokaw; that Hart had constructive notice of plaintiff's rights by reason of the fact that the contract was duly recorded; and that such notice was brought home to him when only $50 of the purchase price had been deposited under the contract of sale with Brokaw.

"The case was submitted on special issues, in response to which the jury found:

"(1) That Hart had no actual notice of the contract of sale between Brokaw and plaintiff, Wilson.

"(2) That Hart had no actual notice that plaintiff, Wilson, was in possession of the land or was claiming any interest therein.

"(3) That Hart was in possession of no fact or facts which would put a reasonably prudent person on inquiry that the plaintiff, Wilson, was claiming any interest in the land prior to the date of closing the contract.

"(4) That the highest cash market value of the land in question at the date of closing the contract and at any time since is $8 per acre.

"(5) That, prior to entering into the contract for the sale of the land to Hart, Brokaw did not offer to sell the land to plaintiff at $8 per acre cash.

"(6) That, prior to the sale of the land to Hart, Brokaw did not deny plaintiff, Wilson, the right to buy the land in question at $8 per acre cash.

"The court entered a judgment in favor of Wilson, decreeing specific performance of the contract, and directing Hart to convey the premises in question to Wilson, and deposit the conveyance in the registry of the court within 20 days from the date of the judgment. It further directed the clerk of the court to deliver said conveyance to Wilson upon the payment into the registry of the court by Wilson of the sum of $1,280 for the use and benefit of Hart. It is further recited in the judgment that, if Hart refuses to obey the order of the court in executing the conveyance, the judgment shall have the force and effect of a deed of conveyance upon the payment by plaintiff into the court within 20 days of the said sum of $1,-280 for the use and benefit of Hart. The record does not show whether said deed has been made, nor whether Wilson has ever paid the sum of $1,280."

Upon appeal, the Court of Civil Appeals affirmed the judgment of the District Court. See 281 S. W. 339.

[1] We think the Court of Civil Appeals has announced correct rules of law applicable to the facts as found by that court. But that court as well as the trial court set aside

and held for naught the findings of the jury upon those very fact issues, and entered a judgment contrary thereto. And, as we shall show, the findings upon these special issues were not immaterial. They were not fact issues beyond and outside the jury findings, and independent thereof, upon which the judgment entered could be sustained. Such judgment is utterly inconsistent with said findings by the jury.

The second assignment of error in the application reads as follows:

"The honorable Court of Civil Appeals erred in holding and deciding that the trial court did not err in rendering judgment for the plaintiff, notwithstanding the trial court had, by special issue, submitted to the jury the question of whether or not Brokaw denied plaintiff the right to buy the land, which issue was material under the pleadings, and which issue the jury had answered in the negative."

Counsel submits, under aforesaid assignment, the following proposition:

"The trial court having submitted to the jury the question of whether or not Brokaw denied plaintiff Wilson the right to buy the land at $8 per acre, cash, which was the price and terms at which the land was sold to defendant Hart, and the jury having answered such issue 'No,' and said issue being a material issue, the trial court erred in not rendering judgment in conformity with such finding and in rendering judgment contrary to such finding."

This assignment and proposition thereunder must be sustained. In his pleading seeking this specific performance, Wilson pleaded:

"That about June 7, 1924, defendant Hart sought to buy from and did offer to defendant Brokaw the sum of $1,280 for said land, and that thereupon such defendant Brokaw did inform the plaintiff that he could not have the land, unless he paid a higher and greater consideration therefor, but would sell the said land for the offer of $8 per acre to such other person, unless the plaintiff would pay such greater price; that thereupon this plaintiff did offer to the defendant the sum of $8 per acre for the land, in cash, as was the price submitted, and was thereupon entitled to sell the said land to such other person at $8 per acre. This plaintiff thereupon became entitled to buy the same at such price, but that said defendant specially denied him the right to buy at such price, and refused to carry out his contract to sell to this plaintiff."

[2] While this was pleaded, and while the proof on the point was conflicting, the jury found that Wilson was not denied his right to purchase at the same price. The jury did find that no offer was made to Wilson before the option contract was given to Hart by one who claimed to be an agent for Brokaw. That contract was entered into on June 3, 1924. But, only four days later, Brokaw was writing Wilson about his offer, and telling him if he (Wilson) did not want to buy the property it would be sold to another. Brokaw asked Wilson to let him hear from him. The record shows that several letters passed between that time and September 16, 1924, when the sale to Hart was finally consummated. Brokaw was no more an interested witness than was Wilson. The jury had a right to believe the one whose credibility most appealed to them. And they answered that Wilson was not denied his preference right to purchase at $8 an acre cash before the sale to Hart was closed. There was some evidence that Wilson, shortly after receiving the letter of June 7th, aforesaid, tried to buy the property largely on credit. If Brokaw tried to give Wilson his right to purchase under the contract, and held up his sale to Hart as long as he did, then Wilson had all the chance to buy which he could claim. The jury found this to be true, and upon that finding judgment should have been rendered for Hart. The finding is sustained by the evidence.

There is no conflict between that finding of the jury and its fifth finding already quoted. It is quite clear that Brokaw did not begin negotiations with Wilson until after his agent had an offer from some one else. From these findings of the jury it is apparent that Wilson had no cause of complaint against Brokaw, and the latter did not close his sale to Hart until after Wilson had so waived and lost his rights.

[3] In the light of this jury finding, the trial court had but two options. It was its duty to either enter judgment in accordance therewith or set aside the findings and grant a new trial. This rule of law is ably stated by Presiding Judge German in the case of Massie v. Hutcheson (Tex. Com. App.) 270 S. W. 544, as follows:

"The fundamental question for decision is this: The trial court having submitted to the jury special issue No. 1, which was a material one under the pleadings, and the jury having returned an answer thereto, which was accepted by the court, could the court thereupon enter a judgment contrary to such finding, even though it be found, by reason of the answer to special issue No. 2, that all the evidence upon which answer to special issue No. 1 is based was improperly admitted, and such answer is in effect without any legal evidence to support it? If the trial court was without power, in the face of the statute, to disregard such finding, even though without any evidence to support it, then the Court of Civil Appeals was without power to affirm the judgment, even though it was a correct one in the light of the undisputed facts.

"Article 1990, V. S. Tex. Civil Statutes, in its plain language, and as interpreted by the courts of this state, gives an unequivocal answer to this query. That article provides:

"'In all cases where a special verdict of the jury is rendered, * * * the court shall, unless the same be set aside and a new trial granted, render judgment thereon.'

"In the case of Waller v. Liles, 96 Tex. 21, 70 S. W. 17, tried upon special issues, the court say:

" 'It is deducible from the ruling in that case (Ablowich v. Bank, 95 Tex. 429 [67 S. W. 79, 881]), that the findings of the jury upon the issues made by the pleadings in a case, although against the undisputed evidence, or without evidence to support them, cannot be disregarded, but must constitute the only basis upon which any proper judgment can be rendered.'

"See, also, Henne & Meyer v. Moultrie, 97 Tex. 216, 77 ·S. W. 607; Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515; Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 445; Tompkins v. Hooker (Tex. Civ. App.) 229 S. W. 351.

"We think the authorities unquestionably establish the proposition that, if the trial court submits an issue to the jury which under the pleadings is a material one to the decision of the case, and the jury is permitted to answer that issue, which answer is received by the court, then, under the statute, the trial court is without discretion, except to set aside the finding and grant a new trial, or to render judgment upon and in conformity to the finding, even though the court should conclude that all of the testimony on which the answer to such issue is based was improperly admitted, and there is no evidence to uphold the finding."

The aforesaid holding of the Commission of Appeals was approved by the Supreme Court.

The third assignment of error in the application and proposition thereunder read as follows:

### "Third Assignment of Error.

"The honorable Court of Civil Appeals erred in holding and deciding that the trial court did not err in rendering judgment for the plaintiff and against the defendant, though the trial court had submitted in special issues to the jury the question of whether or not the defendant· Hart had actual notice as to the contract between the defendant Brokaw and plaintiff Wilson, whether or not defendant Hart had actual notice that Wilson was in possession of the land or was claiming any interest therein, and whether or not the defendant Hart was in possession of any fact or facts which would put a reasonably prudent person·on inquiry that the plaintiff Wilson was claiming any interest in the land, and each of which issues the jury had answered in the negative.

### "Proposition.

"The trial court having submitted to the jury the issues as to whether or not the defendant Hart had any actual notice of plaintiff's rights or of·any fact putting him upon inquiry of the contract or plaintiff's rights thereunder, and which issues were material, and the jury having answered both issues in the negative and in favor of the defendant Hart, which was a finding that defendant Hart had no notice of the contract or of plaintiff's rights, the court erred in not rendering judgment in accordance with such findings of the jury and in rendering judgment in favor of the plaintiff and contrary to such findings of the jury. This proposition is germane to the fourth assignment."

This is a similar proposition to the one we have already discussed. Hart pleaded that, in any event, he was an innocent purchaser of this property. But the Court of Civil Appeals holds that he had constructive notice of the rights of Wilson because of the actual adverse possession of the land by Wilson. We doubt if the evidence of this actual adverse possession was so overwhelming and conclusive as to justify this finding by the Court of Civil Appeals. The evidence in this case is not of that kind which Judge Brown was reviewing in the case of Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788, when he said:

"The jury were the judges of the credibility of the witnesses, but they had not the right to arbitrarily reject the evidence of an unimpeached witness against whom there was no discrediting fact or circumstance. Jewell and Pollock appear from their testimony to have been friends to Melton and there is nothing to show that they bore any relation whatever to the Fraternity that would justify a suspicion against their truthfulness.

"The jury ·were the judges of the weight of the evidence, but they could not lawfully deny proper weight to undisputed facts with no suspicion cast upon them. If the jury had the power to discredit any and every witness and to disregard any and all facts, their verdicts could not be set aside by the judge nor reviewed by the appellate courts. Yet the law enjoins it upon the courts to set verdicts aside when contrary to the evidence or the law."

Since this case must be reversed and remanded any way, it is not necessary for us to pass definitely upon the character of the evidence as to this actual adverse possession. On another trial, this very issue can, at the option of the parties, be submitted to the jury.

The trial court and Court of Civil Appeals would doubtless have held that these jury findings were against the great weight of the testimony and granted a new trial had they passed upon that question. Therefore we can do only what they would have done, and remand this case for a new trial. See Barron v. Railway Co. (Tex. Com. App.) 249 S. W. 825.

It is not necessary to pass upon any of the other contentions raised in the application. Except as already pointed out by us, we think the opinion of the Court of Civil Appeals is correct. The next trial should conform to the latter opinion, except in so far as it conflicts with the questions we have discussed herein.

For the reasons stated, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and cause remanded to the district court.