**LO–VACA GATHERING COMPANY, Appellant,**

v.

**W. W. MOORE, Appellee.**

**No. 11370.**

Court of Civil Appeals of Texas.

Austin.

May 4, 1966.

**162**

Webb, Webb & Meredith, Ross Meredith, Elgin, W. T. Blackburn, Corpus Christi, for appellant.

Huggins, Vickery & McConnell, Charles R. Vickery, Jr., Houston, for appellee.

ARCHER, Chief Justice.

This is a condemnation case for an underground pipeline easement across a 2121-acre tract of farm and ranch land in Bastrop County. Regular condemnation proceedings were held, and appellee filed objections to the award of the Special Commissioners. Trial was before a jury. Appellee's motion to disregard the answers to the special issues was sustained in part and overruled in part. This appeal is only from those parts of the judgment that are based upon the jury's answers to the special issues which relate to the decrease in value to appellee's property crossed by the pipeline.

The only issues are the damage issues. Since the amount of damage is the only issue, the "sufficiency" of the evidence to support the damage findings is the controlling issue.

The damage issues include three separate inquiries:

(1) Damage to the 4.98 acre "permanent easement"—i. e.—difference in value before and after taking, because a right-of-way rather than the fee was taken.

(2) Damage to the remainder—i. e.—the difference in value before and after taking of the 2111 acres.

(3) Damage for the temporary "casting easement;" this was resolved by stipulation and is not now in issue.

The "no" and "insufficient" evidence points attack the jury findings establishing the damages to the "permanent easement" and the "remainder;" the damages awarded in the judgment for the permanent easement were reduced by a "remittitur."

The appeal is founded on seventeen points and are that the court erred in overruling plaintiff's motions to disregard the jury's answers to Special Issues Nos. 3, 4 and 5, and that the jury's findings in response to Issues Nos. 2, 3, 4 and 5 were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and

unjust; that the jury's answers to Special Issues Nos. 4 and 5 were grossly excessive; that there was no competent evidence to support the jury's findings in response to Issues Nos. 2, 3, 4 and 5.

Appellant claims that Special Issues Nos. 1 and 2 (the difference in the before and after value of the permanent easement) established a reduction in value that is excessive, however there was an admitted reduction, the amount is in dispute.

Appellant contends that an award of more than $500.00 is excessive but a witness, E. Charles Lewis, for appellant, fixed the damage at $675.00, and another witness for appellant, Jim Fredericks, fixed the damage at $946.00.

■ The trial court raised the answer of the jury to Issue No. 2 from $50.00 to $397.94, which resulted in a reduction of damage. The appellee makes no point of this improper procedure. See Adams v. Houston Lighting & Power Co., 158 Tex. 551, 314 S.W.2d 826, for an approved procedure in making a remittitur.

The opinion testimony on Issues Nos. 1 and 2 are ranges from $2,490.00 to $1,494.00 as to Issue No. 1 and from $50.00 to $1,125.00 as to Issue No. 2.

The jury fixed the value before taking at $2,490.00 and the after taking value at $50.00; this amount was raised by the trial judge to $397.94.

In answer to Issue No. 3 the jury found that the tracts laying outside of the easement were decreased in market value by reason of the taking of the easement.

In answer to Issue No. 4 the jury found that the value of the remaining 2111 acres excluding the pipeline right of way, was $500,000.00, and in answer to Issue No. 5 found that the market value of the 2111 acres, excluding the pipeline right of way after the taking of the easement was $492,617.00.

The jury's duty was to resolve the conflicts in the testimony and did so in making its findings and we believe such findings are supported by the testimony of witnesses Duncan Allen, Grady Tuck, Jr. and W. W. Moore.

The right of way is 75 feet wide and extends from a point in a northerly property line fence of the grantor's property and extends south 54° 00′ West 5,417 feet to a point in the west property line fence of grantor's property, and the easement taken contains 4.98 acres of land, and condemned for the construction, location, maintenance, operation, renewal, repair, inspection, replacement, restoration and removal of one 20 inch pipeline and underground appurtenances, etc.

The damages for the 4.98 acres taken was fixed at $2,092.06 and the before and after value of the remainder of land was $7,383.00 or a total of $9,475.00.

■ Appellant complains of the amount allowed for the right of way as being excessive and against the great weight and preponderance of the evidence.

As we have stated the testimony of the several expert witnesses differed in amounts but even witnesses for appellant fixed a value of more than $500.00 damages, and the jury could accept or reject such of the testimony as it desired.

The easement extends for almost a mile in a diagonal direction across the appellee's land.

There can be no question but that the pipeline is a dangerous instrumentality, such was admitted and also that gas lines rupture and are dangerous.

Appellant placed danger signs on the pipeline a short distance from the condemned area. The line was encased under highways.

Block valves were installed as a precaution against the danger of leaks and explosion. One of appellant's witnesses testi-

fied at length that there was no danger in the gas line but counsel for appellant stated that he did not have the same opinion that his witness did.

The employees of appellant walked the easement area at intervals, and low flying planes were intended to be used "every ten days, every week, possibly every two weeks, depending on the weather."

The ranch foreman testified that the condition of the right of way interfered in the use of farm machinery, because every time you cross it you have to slow down, and at times breakage was had.

There are other facts such as the sunken condition of the right of way above the gas line, which would require filling from time to time. Light electrical currents are maintained to prevent the pipe from corroding and such current would be attracted to any metal improvements and be affected, and the right of way easement restricts the location of improvements in the 5-acre area.

The testimony on the adverse impact of pipeline easement on purchasers is in conflict, and the jury was entitled to accept the opinions of any and all of the experts, or reject some.

■ The verdict of the jury on the easement taken is supported by the evidence, but there were no comparable sales which could be used as a basis for opinions on answer to Issue No. 2, the "after value" in the 4.98 acres, the "permanent easement," and the jury could rely on the intuitive opinion of the experts. State v. Haire, Tex.Civ. App., 334 S.W.2d 488, er. ref., n. r. e.

The answers of the jury to Issues Nos. 3, 4 and 5 are supported by the testimony.

One of the witnesses called by appellee was Grady Tuck, Jr., who testified that he was in the business of buying land for resale, and had been for several years, and had personal knowledge of Bastrop County sales. He testified that the gas pipeline depreciated the value of the land by $50,000.00,

and gave as his reasons the easement line and its danger, lack of privacy, and anything that limits the use of land is detrimental to its sale, and, the particular property in this case was damaged, and would affect a substantial number of potential buyers.

Duncan Allen, another witness called by appellee, testified that the value of the remainder of the land had been reduced $32,-578.93 and gave as the basis as the taking of the easement, the difficulty to work over the easement, the attendant danger and the fact that the line cut diagonally across the best land in the ranch and makes it less convenient to plan farming, or the location of improvements, and that the privacy of land is less desirable by the presence of the line.

W. W. Moore, the appellee with 50 years experience in real estate business, testified that the laying of the pipeline across his ranch devolved the rest of his land, and fixed the value before taking at $639,500.00, and after the taking as $586,600.00. The witness set out what he believed caused the reduction, as the easement location, the right of ingress and egress across the land.

E. Charles Lewis, a witness called by the appellant, testified that there is danger on any pipeline, but that he did not consider the danger to be a depressor of the market, but does eliminate some buyers, and that the easement was a detriment to the owner of the property until the surface has been restored. The witness testified that privacy was important in the value of the land to some buyers, and not to others, that it would all depend on the piece of land, and that it would be of some importance to the land in question, and that the right to locate improvements in the operation of a ranch where needed was important.

The verdict for $7,383.00 as the reduction in value of the remainder is not excessive in view of all the facts and conditions testified to in the record, and is supported by the evidence.

There can be no question but that the value and usefulness of the land has been

adversely affected by the pipeline easement and the right to the use of such in the installation of the pipe and the small electric line in connection therewith as related by witnesses.

■ Sales data as related by witness Fredericks was not admissible, except for the limited purpose of showing the basis for his opinion. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207.

The factual basis for appellee's expert opinions are reflected in the record and are sufficient evidence. Lo-Vaca Gathering Co. v. Callahan, Tex.Civ.App., 388 S.W.2d 323, er. ref., n. r. e.

There were no reasonable grounds to sustain appellant's objection to questions establishing appellant's intended use of the easement as alleged in appellant's allegations in its petition for condemnation, which fully set out such intended use, all of which were lawful.

We do not believe that of the alleged errors separately or as cumulative amount to a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment under Rule 434, Texas Rules of Civil Procedure.

There is no question but that appellee was entitled to damages for the taking, and the verdict is not excessive, and is well within the range of the expert testimony. No improper judgment is shown. Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277.

The verdict followed the testimony of Tuck and Moore rather than Allen on Issues Nos. 1 and 2, Allen's testimony did not contribute to the verdict, and the verdict on Issues Nos. 3 and 4 was far less than Allen's testimony, and consequently did not contribute to the verdict on these issues. State v. Powell, Tex.Civ.App., 376 S.W.2d 929, n. w. h.

■ The record in this case is long, containing 437 pages and a number of exhibits in the statement of facts, and on the whole reflects conflicting views on the part of expert witnesses called by the respective parties and the jury resolved the fact issues as reflected by the verdict and was within its power, and such verdict was reasonably supported by the evidence.

■ We recognize that a witness may testify as to the value of the land by merely stating that he knows the land and its market value, but that when he testified as to damage to the land and consequent depreciation in value, such testimony must be based on reasonable information.

We believe that witnesses for appellee did base their testimony on reasonable information.

Appellant cites Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837, er. dism., but in such case the only evidence was unexplained opinion on the before and after value, and no evidence established the cause or why of the reduction, and is not controlling or persuasive in the instant case.

There are cases upholding depreciation in value of the remainder because of the right of ingress and egress, and consequent interference with privacy, the use of farm machinery, and interference with ranch operations. Southwestern Public Service Co. v. Spurlock, Tex.Civ.App., 378 S.W.2d 134, n. w. h. Texas Electric Service Company v. Etheredge, Tex.Civ.App., 324 S.W.2d 322, n. w. h., in which the Court held:

"In Brazos River Conservation and Reclamation Dist. v. Costello, Tex.Civ.App., 169 S.W.2d 977 (Ref. w. m.), we held that in such a case as this the parties had a right to introduce evidence of anything which would tend to affect the value of the land in the eyes of a prospective pur-

chaser, or tend to make it more or less valuable to its owner."

The judgment of the trial court is affirmed.

Affirmed.